UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HERLINDA FRANCISCO, on behalf of herself,
FLSA Collective Plaintiffs and the Class,

                                        Plaintiff,

                                                                    Case No. 19-CV-01649 (PKC)(ST)

          -v.-


NY TEX CARE, INC., d/b/a GREEN & WHITE
DRY CLEANERS, and INSUN YUN,

                              Defendants.
-------------------------------------------------------------------X



**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO
CERTIFY CLASS AND APPROVE CLASS COUNSEL**



Arthur H. Forman
98-20 Metropolitan Avenue
Forest Hills, New York 11375
(718) 268-2616

*Attorney for Defendants*

# TABLE OF CONTENTS

Table of Authorities......................................................................................................iii

Preliminary Statement....................................................................................................1

Legal Argument: Rule 23................................................................................................3

Numerosity: Rule 23(a)(1) ……………………..……………………..………………5

Commonality: Rule 23(a)(2) ……………………………………………………………6

Typicality: Rule 23(a)(3) …………………………………………………………..11

Adequacy: Rule 23(a)(4) …………………………………………………………..12

Rule 23(b)(3): Predominance ……………………………………………………   13

       Superiority ……………………………………………………………..…14

Conclusion...................................................................................................................15

# TABLE OF AUTHORITIES

## Cases                                                                Page(s)

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ...............................................................................................3

*Ansari v. New York Univ.*,
179 F.R.D. 112 (S.D.N.Y. 1998) .......................................................................5

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*
    222 F. 3d 52 (2d Cir. 2000) ........................................................................12

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013) ....................................................................................4

*Daniels v. City of New York*
    198 F.R.D. 409 (S.D.N.Y. 2001) ...............................................................3

*Denney v. Deutsche Bank AG*
443 F. 3d 253 (2d Cir. 2006) ...........................................................................12

*Floyd v. City of N.Y.*
    283 F.R.D. 153 (S.D.N.Y. 2012) ..............................................................11

*Fogarazzao v. Lehman Bros., Inc.*
    232 F.R.D. 176 (S.D.N.Y. 2005) ...............................................................3

*Franco v. Allied Interstate LLC*,
    No. 13-cv-4053 (KBF), 2018 WL 3410009 (S.D.N.Y. July 13, 2018), lv.
    appeal. den., 2019 WL 340388 (Jan.24, 2019) ...............................................11, 12

*.In re Currency Conversion Fee Antitrust Litig.*
    230 F.R.D. 303 (S.D.N.Y. 2004) ...............................................................4

*In re NASDAQ Market–Makers Antitrust Litig.*
    169 F.R.D. 493, (S.D.N.Y.1996) ..............................................................11

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*
    330 F.R.D 11 (E.D.N.Y. 2019) .................................................................. 7

*Jin v. Shanghai Original, Inc.*
    990 F.3d 251 (2d Cir. 2021) .......................................................................15

*Johnson v. Nextel Communications Inc.*
   780 F.3d 128 (2d Cir. 2015) …………………………………………………..………..13

*Lewis v. Alert Ambulette Service Corp.*
   No. 11-CV-0442 (JBW), 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) …………….…12, 14

*Roach v. T.L. Cannon Corp.*
   778 F.3d 401 (2d Cir. 2015) ………………………………………….………...14

*Rossini v. Ogilvy & Mather, Inc.*
   798 F. 2d 590 (2d Cir. 1986) ……………………………………………………4

*Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indemnity Ins. Co.,*
   319 F.3d 205 (5th Cir. 2003), cert. denied, 540 U.S. 819 (2003) …………………….…..4

*Teamsters Local 445 v.* Bombardier Inc.
   546 F.3d 196 (2nd Cir. 2008) ……………………………………………………3

*Tyson Foods, Inc. v. Bouaphakeo*
   577 U.S. 442, 136 S. Ct. 1036 (2016) ………………………………………13

*Waggoner v. Barclays PLC*
   875 F.3d 79, 93 (2d Cir. 2017) ……………………………………………………14

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ……………….....................................................3, 7

*Waste Mgmt. Holdings Inc., v. Mowbray*
   208 F.3d 288 (1st Cir. 2000) ………………………………………………………4

*Whitehorn v. Wolfgang's Steakhouse, Inc.*
   275 F.R.D. 193 (S.D.N.Y. 2011) ……………………………………………14

## **Statutes**

29 U.S.C. §§ 2601 *et seq* (Family and Medical Leave Act) …………………….....................1

29 U.S.C. §§ 201 *et seq (*Fair Labor Standards Act) ........…………………………....................4

29 U.S.C. §216(b) …………………………… ........……………………………....................4

### **Rules**

Fed. R. Civ. P. 23 ……………………………………………………………………passim

## **PRELIMINARY STATEMENT**

The sole plaintiff in this action, Herlinda Francisco ("Ms. Francisco" or "Plaintiff"), who alleges she worked for Green & White Dry Cleaners as a dry clean presser until January 7, 2019, Pl's First. Decl. ¶ 1,[1] moves for Rule 23 class certification of her New York labor law claims seeking to represent all current and former maintenance workers, cleaners, washers, pressers, loaders, and counter persons who worked for defendants NY Tex Care, Inc., d/b/a Green & White Dry Cleaners ("Tex Care") and Insun Yun ("Yun" and collectively with Tex Care the, "Defendants"), at any time between March 22, 2013 and the present.  Plaintiff's Notice of Motion, Exh. 1, p.1.[2]

Tex Care is a commercial laundry and dry-cleaning plant located in Queens, New York. Yun Affid. ¶ 2.[3]  As will be explained below in the discussion of numerosity, Defendants did not own or operate the business that employed Plaintiff until February 14, 2018.  As further explained in the same section, since February 14, 2018, Defendants did not employ any maintenance workers, loaders or counter persons.

Plaintiff commenced this action with the filing of the Complaint on March 22, 2019, seeking to recover damages for Defendants' alleged violation of the Family and Medical Leave Act, 29 U.S.C.§2601, et seq. ("FMLA"), on the ground Defendants terminated Plaintiff's employment on January 7, 2019 in retaliation for her calling in sick the day before she was

---

[1] Citations to "Pl's First Decl." refer to ECF No. 33, Plaintiff's declaration in support of her prior motion for collective action.  A copy is also attached to Plaintiff's moving papers as Exhibit "B."

[2] In accordance with the Court's bundling rule, Plaintiff's motion papers have not yet been filed. (*See*, ECF No. 52).

[3] Citations to "Yun Affid." refer to the Affidavit in Opposition of Insun Yun dated March 21, 2021.

terminated.  Compl. ¶¶30 and 49.[4]  Plaintiff further alleged in the Complaint that she was entitled to recover for unpaid minimum wages and overtime under the Fair Labor Standards Act ("FLSA"), Title 29, United States Code §§ 201 *et seq.* and New York Labor Law, as well as related New York Labor Law violations.  Compl. ¶¶ 1-2.  Defendants filed an Answer to the Complaint on August 2, 2019.  ECF No. 16.  Discovery closed on February 19, 2021.  ECF No. 51.

On November 22, 2019, Plaintiff filed a motion to certify an FLSA collective action pursuant to 29 U.S.C. §216(b).  ECF No. 31.  Plaintiff sought the approval of the court to send notice of the action to "all non-exempt laundry employees."  ECF No. 31-1.  By Memorandum and Order dated June 12, 2020, United States District Judge Pamela Chen granted in part the Report and Recommendation of Magistrate Judge Steven Tiscione , ECF No. 44, in so far as Magistrate Judge Tiscione had limited Plaintiff's motion to conditionally certify a collective of all current and former dry clean pressers. ECF No. 44, p.4.  In limiting the collective to dry clean pressers, Judge Chen quoted from page 9 of Magistrate Judge Tiscione's Report and Recommendation finding that, "Plaintiff's Complaint is simply devoid of any allegations regarding Tex Care employees who work in a position other than presser."[5] *Id.*

Nevertheless, Plaintiff now seeks to certify a class of all non-exempt employees even though that class would be composed of the same employees the Court declined to certify as a collective action.  Defendants respectfully submit that Plaintiff has presented no additional evidence to satisfy the requirements of Rule 23 as to any employees other than dry clean pressers.  As argued below in the section on numerosity, because there have only been ten dry clean pressers employed by Defendants, a class action is not appropriate.

---

[4] Citations to "Compl", refer to Plaintiff's Complaint, ECF No. 1.
[5] Magistrate Judge Tiscione used the term 'presser' as short for 'dry clean presser.'
  ECF No. 38, p. 2, fn.1.

Should the court find, however, that Plaintiff has presented evidence not previously submitted in her collective action motion sufficient to satisfy the other requirements of Rule 23 as to employees other than dry clean presser, class certification should be denied on the ground that Ms. Francisco, the sole plaintiff in this action, is not an appropriate representative of the class.

### LEGAL ARGUMENT: RULE 23

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). The Rule provides that a plaintiff may be permitted to sue on behalf of a class if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As the moving party, Plaintiff bears the burden of establishing all the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14, 117 S. Ct. 2231 (1997); *Daniels v. City of New York,* 198 F.R.D. 409, 413 (S.D.N.Y. 2001). Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiff must produce sufficient evidence, by affidavits, documents, or testimony to satisfy the Court that each requirement of Rule 23 has been proved by a preponderance of the evidence. *Teamsters Local 445 v. Bombardier Inc.,* 546 F.3d 196, 202-203 (2nd Cir. 2008).

"The Supreme Court unequivocally requires district courts to undertake a 'rigorous analysis' that the requirements of Rule 23 have been satisfied." *Fogarazzao v. Lehman Bros.*, Inc., 232 F.R.D.

176, 179 (S.D.N.Y. 2005).     "All of the elements of Rule 23 are prerequisites to certification; failure to meet any one of them precludes certification as a class." *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 310 (S.D.N.Y. 2004).

In deciding whether to certify a class, a court must not base its decision exclusively on the pleadings, but "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings Inc., v. Mowbray,* 208 F.3d 288, 298 (1st Cir. 2000). "Going beyond the pleading is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues*". Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indemnity Ins. Co*., 319 F.3d 205, 222 (5th Cir. 2003), cert. denied, 540 U.S. 819 (2003).

In addition to the prerequisites of Rule 23(a), a party seeking class certification must also satisfy "through evidentiary proof" at least one of the three requirements listed in Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). In this action, plaintiff seeks class certification under Rule 23(b)(3) involving issues of commonality. Plaintiff's Memorandum of Law in Support ("Memo."), pp. 18-20.

As argued below in connection with the typicity and adequacy requirements of Rule 23(a), plaintiff has not shown she is able to represent the best interests of the class. *Cf. Rossini v. Ogilvy & Mather, Inc.,* 798 F. 2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"). Plaintiff's knowledge of the pay and hours of other non-exempt employees of Green & White has been fluid from the commencement of the action. Plaintiff has claimed to have knowledge of her co-workers' claims based on facts which she has afterwards disavowed. As a result, Plaintiff's testimony concerning the common damages of

the class will be susceptible to impeachment by defendants.  Plaintiff, the sole representative, will not

represent the best interests of the other class members.

<strong><u>NUMEROSITY:  RULE 23(a)(1)</u></strong>

A class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P.

23(a)(1).  Courts typically hold that numerosity is satisfied when the class has 40 or more members,

but not when the class is composed of 21 or fewer.  *Ansari v. New York Univ.*, 179 F.R.D. 112,

114 (S.D.N.Y. 1998).

Plaintiff estimates, off the top of her head, that at least 50 employees worked at Green &

White since Plaintiff was hired in 2017.  Pl's Memo, p.12.[6]  However, defendants did not operate

the business prior to February 14, 2018.  Yun Affid., ¶¶3-5.  On that date, Tex Care purchased the

assets of a business called Angel Brite, changed the name to Green & White Dry Cleaners, and

hired Plaintiff and other employees who had worked for Angel Brite.   Angel Brite was operated

by K Blue Sky Corp., which was not owned or managed by Yun.  Yun Affid. ¶¶3-7.

During her deposition, Plaintiff first testified that she was hired to work at Green and White

by Mr. Yun. .Forman Decl., Exh. "A", 19:7-20:10.[7]  With further questioning, Plaintiff revealed

that she could not remember if the business was called Green and White when she was hired.  *Id.*

22:13-21.  Subsequently, after returning from a break, Plaintiff corrected her testimony to say that

she was not hired by Mr. Yun, and he was not at the business until several months after she was

hired.  *Id.* 29:10-25.

---

[6] Citations to "Pl's Memo" refer to the Plaintiff's Memorandum of Law in Support.
[7] Citations to "Forman Decl." refer to the Declaration of Defendants' attorney, Arthur
   H. Forman, dated April 5, 2021.

Additionally, there have never been maintenance workers. loaders or counter persons employed there. Id. ¶10.  Even if by loaders, Plaintiff means drivers, she nevertheless admits in her supporting declaration that she knows nothing about drivers. Pl's Second Decl ¶6.[8]  As the moving papers fail to present any facts concerning the drivers' employment, they certainly should not be included in the class, and therefore should not be counted.

As of the date of his deposition, September 27, 2019, Yun testified there were approximately 25 employees.  Plaintiff's Exh G, p. 8.  Of course, the number of employees would include owners, managers, and other non-exempt employees, as well as drivers.  Excepting those employees brings the count below the number Plaintiff was required to show by a preponderance of the evidence.  As will be argued below, Plaintiff's vague estimate of the number of employees, is no more persuasive than her claims to have knowledge of the pay or hours of any employees other than dry clean pressers.  If the court limits the class to employees who have worked as dry clean pressers, as it did with Plaintiff's prior motion for collective certification, then the motion should be denied based on the fact that there have only been ten such employees. Yun Affid.¶16.

Perhaps there were 50 employees in 2017 when Angel Brite hired Plaintiff, including maintenance workers, counter persons, and loaders.  But there have never been that many employees subsequent to February 14, 2018, when Defendants began operating and managing Green & White Dry Cleaners.

## COMMONALITY: RULE 23(a)(2)

Under Rule 23(a)(2) there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  A question is common if it is "capable of classwide resolution-which means that

---

[8] Citations to "Pl's Second Decl." refer to the Declaration of Herlinda Francesco attached to Plaintiff's moving papers as Exhibit "E."

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 330 F.R.D 11, 52 (E.D.N.Y. 2019). Plaintiff must demonstrate "the capacity of a classwide proceeding to generate common *answer*s apt to drive the resolution" of the case. *Id.* (quoting *Walmart Stores v. Dukes*, 564 U.S. 338, 350 (2011).

Previously, in denying Plaintiff's motion for a collective action, the Court found that Plaintiff had no knowledge of any employee's wages or hours other than those from her department, the dry clean pressers. The same deficiency is present in Plaintiff's instant motion for class action. Plaintiff attempts to overcome the Court's previous conclusion by stating that she and other dry clean pressers sometimes helped out by working in other departments, which are in close proximity to each other. Pl's Second Decl. ¶¶3-4. Nevertheless, it is still the employment of the same five dry clean pressers that Plaintiff describes. By Plaintiff describing that the employees in different departments worked close by each other, and sometimes performed each other's work, Plaintiff fails to contend that employees in departments other than her own worked past their shifts without being paid for the extra time, as she alleges in the Complaint.

Plaintiff goes on to contend that all employees, not just dry clean pressers, "had to punch in and out, but the Company would automatically deduct one hour from our daily schedule, even though we work through our scheduled shifts without breaks. We would only take a lunch break of approximately 20 to 25 minutes." *Id.* ¶ 5.

In her motion for class action certification, Plaintiff alleges for the first time, that no employees had at least thirty minutes for lunch. In the Complaint, she had claimed that employees were not paid for the time they worked *past* the end of their shifts. Compl. ¶¶ 27-28. In fact, in her prior declaration, filed in support of Plaintiff's motion for collective certification, Plaintiff

alleged that she and other dry clean pressers "agreed that it was unfair of management to make us work *after* our shifts, and then adjust our time sheet so we were only paid for scheduled shift hours, not our actual hours worked. Pl's First Decl. ¶3 (emphasis added).

Plaintiff was clearly alleging she was not paid for the extra time when she worked past the end of her scheduled shift.  In her motion for collective action, Plaintiff reiterated those allegations. Pl's First Decl.¶3.  But in her declaration is support of her motion for class certification, Plaintiff instead alleges that she and other members of the proposed class, "all had to punch in and out, but the Company would automatically deduct one hour from our daily schedule, even though we work through our scheduled shifts without a break.  We would only take a lunch break of approximately 20 to 25 minutes."  Instead of the end of the day, Plaintiff now claims all employees were not paid for an hour during the middle of the day.

The rationale for Plaintiff altering her allegations is simple.  In her deposition, Plaintiff admits that the dry clean pressers did not have a scheduled time to leave.  Forman Decl., Exh. "A", 25:19-26:12; 34:25-35:3. She further testified that none of the employees in the other departments had a set time to leave.  *Id.*, 37:1-9.  These admissions completely contradict the allegations of the Complaint and motion for collective action, namely her allegation that Plaintiff and other employees routinely worked past their scheduled time to leave without getting paid for the extra time.

Plaintiff's claim to have knowledge of the hours and pay of all non-exempt employees, not just dry clean pressers, is not supported by specific references to any employees other than dry cleaner pressers.  Further, such claim is otherwise unconvincing.  In her instant motion she raises allegations not included in the Complaint, and which she even failed to raise in her motion for collective action.

In her supporting Memorandum of Law, Plaintiff argues that she, and all non-exempt employees, would begin working before the start of their scheduled shift but were not paid for that time. Pl's Memo p. 15. In her deposition, Plaintiff testified, "What do I do when I get to work? I would clean my work area. I would clean and put together everything that I'm going to use. ... Clean the machine, put together or, you know, clean the hangers where you're going to put the clothes. That's what you normally do." Forman Decl. Exh. "A" 23:17-25.

The allegation that Plaintiff has knowledge that all non-exempt employees begin working before the start of their shift to prepare for the day ahead was not raised in the Complaint or in her collective action motion. Similarly, Plaintiff fails to present any evidence that the employees in any other departments, not just the dry clean pressers, would need to prepare for the day by beginning work before their shift starts. The work Plaintiff describes is related to her job as a dry clean presser. "The work of each department is very different. Even if Plaintiff does work before the start of her shift, which is not true, no other department needs to do the work Plaintiff claims to do in the morning." Yun Affid. ¶14.

Besides having knowledge of the hours and pay of all non-exempt employees, Plaintiff claims to know that no employee was provided with a wage notice. Plaintiff merely states, off the top of her head, "None of the other non-managerial employees employed at Defendants' Green & White Dry Cleaners…ever received a wage and hour notice informing them of their rates of pay or other requirements under the New York Labor Law." *Id*. ¶ 8. How she could presume to know that is not explained. In any event, it is not true. Attached to the Affidavit of Insun Yun, previously submitted in opposition to Plaintiff's motion for collective certification, were copies of signed and witnessed wage notices. ECF No. 34-1. Plaintiff ignores Yun's prior sworn affidavit and the attached wage notices and presumes the Court will simply believe anything she says.

Similarly, Plaintiff presumes to know that employees, other than dry clean pressers, were entitled to spread of hours pay. On what basis Plaintiff presumes to know that all employees, not just dry clean pressers, worked more than ten-hour shifts is again not explained. Plaintiff admitted, in her deposition, that her department did not have a set time to leave. Forman Decl., Exh. "A", 25:19-26:12; 34:25-35:3. She further testified that none of the other departments worked the same hours as the dry clean pressers. No department had a set time to leave. Each department would leave work after they had finished all the clothes that had been given to that department for the day. *Id.*, 37:1-9. Even if the dry clean pressers worked more than a ten-hour shift, the other departments did not necessarily work as late. The employees in different departments might leave earlier than Plaintiff. Similarly, Plaintiff might leave before the employees in any of the other departments. If so, she would not be able to say if the other departments worked more than a ten-hour shift.

Even if the dry clean pressers would at times have more work than they could complete in ten hours, the other departments would not necessarily have as much work. Dry clean pressers have a specialized talent for which they are paid more than all the other non-exempt employees at Green & White. Yun Affid. ¶14-15. Employees who handled laundry, not dry cleaning, such as laundry pressers, hangers, cleaners and, if they even existed, loaders, mechanics and counter persons, would not have to have the same work load, and thus not have to work the same hours, as dry clean pressers.

## TYPICALITY: RULE 23(a)(3)

Rule 23(a)(3) requires plaintiff to demonstrate by a preponderance of the evidence that, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of typicality is to ensure that class representatives 'have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'" *Floyd v. City of N.Y.*, 283 F.R.D. 153, 175 (S.D.N.Y. 2012) (quoting, *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y.1996)).

As discussed above, Plaintiff exaggerates her knowledge of the Defendants' pay practices by merely reciting the refrain that whatever she alleges was done to her was done to everyone. Nevertheless, as was found in deciding Plaintiff's motion for collective action, Plaintiff has put forth no convincing support for her claim to have knowledge of the employees of any other departments besides the dry clean pressers.

Additionally, Plaintiff's claims are not typical of the claims of other members of the proposed class in one crucial aspect. As discussed below in the section on adequacy, Plaintiff is motivated by a pressing need to get revenge for her termination from employment by Defendants. Plaintiff's overriding need to satisfy herself by extracting revenge from Defendants colors her allegations to the Court.

In *Franco v. Allied Interstate LLC*, No. 13-cv-4053 (KBF), 2018 WL 3410009 at *4 (S.D.N.Y. July 13, 2018), lv. appeal. den., 2019 WL 340388 (Jan.24, 2019) the district court reasoned that the plaintiff, who had been offered a Rule 68 judgment which would have compensated him in excess of his alleged injury, if he had not rejected the offer, could no longer be thought to be "typical" of the rest of the class. "at least from a colloquial perspective."

11

In her Complaint, Plaintiff alleged she was terminated in retaliation for her calling in sick for one day. Compl. ¶¶30 and 49. In the instant motion for class action, Plaintiff now claims the real reason Defendants terminated her employment was because she had asked for a raise. Pl's Second Decl. ¶8. Plaintiff will allege anything at all in order to hurt Defendants.

### ADEQUACY: RULE 23(a)(4)

To satisfy her burden under Rule 23(a)(4) plaintiff must show by a preponderance of the evidence that she will fairly and adequately represent the interests of the class. See, Fed. R. Civ. P. 23(a)(4); *Lewis v. Alert Ambulette Service Corp.*, No. 11-CV-0442(JBW), 2012 WL 170049, at*11 (E.D.N.Y. Jan. 19, 2012). A plaintiff does not satisfy the Rule unless the court is convinced that plaintiff's interests are not antagonistic to the interests of the other members of the class. *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F. 3d 52, 60 (2d Cir. 2000). A plaintiff has the burden of demonstrating to the court that she will make substantive decisions, "reasonably, in good faith, and in the interests of the majority of the class members." *Franco, supra,* No. 13-cv-4053 at *5.

Similar concerns are present in the instant action. Besides her wage claims, Plaintiff claims she was unjustly terminated in violation of the Family and Medical Leave Act. Compl. ¶¶ 30, and 48-52. However, in her affidavit in support of the instant motion, Plaintiff states, "I believe I was retaliated against because I had complained about my compensation. They used my sick day as an excuse to fire me." Plaintiff's Exh. E, ¶8.

"[T]he proposed class representative must have an interest in vigorously pursuing the claims of the class." *Franco, supra*, 2018 WL 3410009 at *3 (quoting *Denney v. Deutsche Bank AG*, 443 F. 3d 253, 268 (2d Cir. 2006)). Plaintiff is clearly a disgruntled employee. Her shifting and contradictory contentions, as to which of her work hours were not paid to her, and other co-workers, as well as the reason she was terminated, belie her asserted motive that she wants to act in the best

interests of the other members of the proposed class of all current and former non-exempt employees. They raise more than a suspicion that Plaintiff is only out for her own satisfaction- to get revenge for being fired.

The likelihood of Plaintiff not being motivated by selfish reasons and of Plaintiff's representation of the interests of the class members resulting in an outcome favorable to the other employees in the class, is too doubtful to risk.

## RULE 23(b)

### *Predominance*

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule requires courts to "give careful scrutiny to the relation between common and individual questions in a case" and ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577, U.S. 442, 136 S. Ct. 1036, 1045 (2016).

The predominance requirement of Rule 23(b)(3) is more demanding than the commonality requirement of Rule 23(a). *Johnson v. Nextel Communications Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). The predominance requirement of Rule 23(b)(3) requires the Court to assess "whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Id.*

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."

*Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

Plaintiff presents a string of citations to cases for the proposition that, "Courts routinely find that common questions predominate in wage and hour actions brought on behalf oaf a class of employees of the same employer, alleging unlawful policies and practices." Pl's Memo, p.19. However, as argued above, nothing alleged by Plaintiff has been routine.  Her claims as to the compensation policies and pay practices of the Defendants has changed each time she has presented them.  She alleges one set of common policies and practices in the Complaint, another set in her motion for a collective action, and a new set in the instant motion.

### Superiority

To satisfy the Rule 23(b)(3) requirement, a plaintiff must demonstrate to the court that a class action is "the most fair and efficient method of resolving disputes."  *Lewis v. Alert Ambulette Service Corp.*, No. 11-CV-0442 (JBW), 2012 WL 170049, at *14 (E.D.N.Y. Jan. 19, 2012).  Plaintiff quotes from *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) "Courts routinely hold that a class action is superior where…potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by [the] Defendant." Pl's Memo, p. 21.

Plaintiff has not presented any new proof of a policy or practice common to all of Defendants' non-exempt employees. It follows that a class composed of all such employees has not been shown to be a superior method of resolving their claims.  If employees, other than the dry clean pressers, have similar complaints, it is ludicrous to claim they could not present them in separate actions.  The courts are filled with minimum wage and overtime claims brought by individual plaintiffs.

As the Second Circuit recently cautioned in affirming decertification of a class action, "Because of the *res judicata* effect of class action judgments, the class members would have potentially lost the chance to seek redress on their claims in the future…*." Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 (2d Cir. 2021).  It is respectfully submitted that a similar risk will be present in this action if Ms. Francisco is certified by the Court as the representative of the class of all of Defendants' current and former non-exempt employees.

## <u>CONCLUSION</u>

For the foregoing reasons, the court should deny Plaintiff's motion for class action certification.

Date:   April 5, 2021
   Forest Hills, New York

           /S/
         ARTHUR H. FORMAN
         98-20 Metropolitan Avenue
         Forest Hills, New York 1375
         (718) 268-2616

         *Attorney for Defendants*