UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

HERLINDA FRANCISCO, *on behalf of
herself, FLSA Collective Plaintiffs, and the
Class*,

                        Plaintiff,

        - against -

NY TEX CARE, INC., d/b/a GREEN &
WHITE DRY CLEANERS, and INSUN YUN,

                     Defendants.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-1649 (PKC) (ST)

PAMELA K. CHEN, United States District Judge:

Plaintiff Herlinda Francisco brings this putative class action against Defendants NY Tex

Care, Inc., d/b/a Green & White Dry Cleaners ("Green & White"), and Insun Yun, the sole owner

of Green & White, alleging that several of Defendants' employment practices violate the Fair

Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and the New York Labor Law, N.Y.

Lab. Law §§ 190 *et seq.* (the "NYLL").[1]  Currently before the Court is Plaintiff's motion to certify

a NYLL class, pursuant to Federal Rule of Civil Procedure ("Rule") 23, of all current and former

non-exempt Green & White employees.[2]  The central dispute between the parties is whether the

numerosity requirement of Rule 23 is satisfied.  That dispute largely hinges on this Court's prior

---

[1] Plaintiff also brings a claim on her own behalf for violation of the Family Medical Leave Act, 29 U.S.C. § 216(b) (the "FMLA").

[2] Certain categories of employees are exempt from many provisions of the NYLL, such as people employed "in a bona fide executive, administrative, or professional capacity whose earnings are in excess of nine hundred dollars a week."  NYLL § 198-c(3); *Suarez v. Big Apple Car, Inc.*, 806 F. App'x 19, 21 (2d Cir. 2020) (summary order).

ruling on Plaintiff's motion to conditionally certify a FLSA class pursuant to 29 U.S.C. § 216(b),[3] which limited the class to one of several categories of Green & White employees, *i.e.*, the current and former dry clean pressers.  In short, if this Court still finds that the relevant class contains only Green & White pressers, the numerosity requirement would not be satisfied and the motion for class certification must be denied.  But if this Court finds that the relevant class includes all non-exempt Green & White employees, as Plaintiff proposes, the numerosity requirement would be satisfied.  The latter outcome would require the Court to reconsider its decision certifying the FLSA collective and reopen discovery for certain limited purposes.  Nevertheless, upon a complete review of the record to date, the Court now believes that the relevant class is indeed all current and former non-exempt Green & White employees.  Accordingly, and for the reasons explained below, Plaintiff's motion for class certification is granted; the FLSA class is expanded to include all current and former non-exempt Green & White employees; and discovery shall be reopened for certain limited purposes.

## BACKGROUND

Plaintiff filed this case on March 22, 2019.  (Complaint ("Compl."), Dkt. 1.)  For the purposes of both the FLSA and NYLL, Plaintiff sought to represent a class of "all non-exempt employees, including maintenance workers, cleaners, washers, pressers, loaders, and counterpersons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case."  (*Id.* ¶¶ 12, 15.)  Plaintiff alleged that five corporate policies affected all class members equally: Defendants' failure to

> (i) pay them wages for all hours worked, including those at the overtime premium for hours worked in excess of forty (40) each workweek, (ii) pay them [a] "spread of hours" premium for each workday that exceeded ten (10) or more hours, (iii)

---

[3] The Court adopted the Report and Recommendation of the Honorable Steven Tiscione, U.S.M.J., regarding Plaintiff's motion to conditionally certify the collective under the FLSA.

provide them with wage and hour notices upon hiring and as legally required thereafter, and (iv) provide them with proper wage statements for each payment period.

(*Id.* ¶ 18.)  Plaintiff specifically alleged that Defendants engaged in "time-shaving" by reducing the amount of hours that every employee worked on a given day.  (*See, e.g.*, *id.* ¶ 27.)

Defendant Yun was deposed on September 27, 2019.  (Deposition of Insun Yun ("Yun Dep."), Dkt. 56-7, at 1.)  At the deposition, Yun explained that he started operating Green & White in February 2018, replacing another dry-cleaning operation at that location and hiring all of its employees.  (*Id.* at 8:2, 17:15–18:5.)  Green & White is a "wholesale" dry cleaner, meaning that each day, Green & White employees pick up clothes from dry cleaning stores that do not have their own dry-cleaning machinery, clean and press those clothes, and then return them on the same day.  (*Id.* at 22:20–21; Dec. 23, 2019 Affidavit of Insun Yun ("Yun Aff. I"), Dkt. 34, ¶ 10.)  To sustain that operation, Green & White has several categories of employees, including spotters, dry clean pressers, laundry pressers, taggers, baggers, cleaners, and drivers.  (Yun Dep., Dkt. 56-7, at 10:12–16; Yun Aff. I, Dkt. 34, ¶ 10, 13; Mar. 5, 2021 Affidavit of Insun Yun, ("Yun Aff. II"), Dkt. 59, ¶ 11.)  According to Yun, all categories of employees start at the same time, 7:30 a.m., but they have different amounts of work to do, so they all end at different times.  (Yun Dep., Dkt. 56-7, at 40:3–21.)  Green & White utilizes a punch card system—used by all categories of employees— where the workers punch in when they arrive and punch out when they leave.  (*Id.* at 20:5–14, 49:21–50:12.)

Defendants, however, do not pay the employees for the exact number of hours for which they are clocked in.  Instead, Yun reviews the punch cards and modifies the employees' hours in several respects.  According to Yun, he applies these modifications to all of his employees uniformly.  First, he deducts any amount of time that employees are punched in before 7:30 a.m., because they cannot legitimately start working until 7:30 a.m.  (*Id.* at 53:3–54:8.)  Second, he

deducts a full 30 minutes from every non-exempt employees' hours each day, for a lunch break, even though the employees do not clock out or back in for lunch.  (*Id.* at 55:14–58:20.)  Third, he rounds every employee's end time down to the nearest hour.[4]  (*Id.* at 58:21–59:3.)  Yun also testified that no Green & White employees ever work more than ten hours per day because he knows that if they do, he has to pay them more (*id.* at 29:25–30:5), and that all Green & White employees receive the same wage and hour notices and wage statements (*see id.* 27:5–15, 49:21–50:12).

On November 22, 2019, Plaintiff moved to certify the FLSA collective pursuant to 29 U.S.C. § 216(b).  (Dkt. 31.)  Plaintiff did not submit Yun's entire deposition with that motion.  Instead, she submitted only two isolated pages of the roughly 80-page transcript.  (*Compare* Dkt. 32-3, *with* Yun Dep., Dkt. 56-7.)  Plaintiff also submitted a declaration stating that she had worked as a dry clean presser, and providing details about how she had spoken with five other employees—all dry clean pressers—about how they all had been subjected to similar time-shaving practices, and received the same deficient wage and hour notices and wage statements.  (Nov. 20, 2019 Declaration of Herlinda Francisco ("Francisco Decl. I"), Dkt. 33.)  Magistrate Judge Tiscione issued a Report and Recommendation to this Court on that motion on April 20, 2020.  (Report and Recommendation ("R&R"), Dkt. 38.)  Based on the record before him, Judge Tiscione concluded that Plaintiff had not demonstrated that all of Green & White's employees should be considered

---

[4] According to Yun, he rounds up after an employee has worked five more minutes into the hour, so that his employees "gain" sometimes and "lose" other times.  (*Id.* at 59:7–11.)  The precise cutoff time for rounding up and rounding down, and to what portion of an hour he rounds, is unclear.

part of the same class, and thus limited the conditional FLSA class to dry clean pressers.[5]  (*Id.* at 9–10.)  Plaintiff filed no objections, and this Court substantively adopted the R&R, modifying it only to the extent that the class notice needed to be edited to reflect the ways that Judge Tiscione had recommended limiting the class.  (Dkt. 44.)

Discovery closed on February 19, 2021, and Plaintiff moved to certify a NYLL class pursuant to Rule 23 on April 26, 2021.  (Dkts. 51, 55.)  The motion is now fully briefed.  Along with their motion papers, the parties have submitted, among other things, a second declaration from Plaintiff (Feb. 11, 2021 Declaration of Herlinda Francisco ("Francisco Decl. II"), Dkt. 56-5[6]), a second declaration from Defendant Yun (Yun Aff. II, Dkt. 59), and portions of Plaintiff's deposition (Feb. 11, 2021 Deposition of Herlinda Francisco ("Francisco Dep."), Dkt. 60-1.).

## RULE 23 LEGAL STANDARDS

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).  That entails satisfying all of the provisions of Rule 23(a), as well as "at least one of the provisions of Rule 23(b)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Rule 23(a) "provides that a class may be certified only if four prerequisites have been met: numerosity, commonality, typicality, and adequacy of representation."  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).  Those provision require showing that (1) "the class

---

[5] Judge Tiscione also recommended limiting the class to those employed in the three years prior to the suit being filed, rather than six, finding that the best approach in federal cases involving both the FLSA and NYLL.  (R&R, Dkt. 38, at 8–9.)

[6] Both of Plaintiff's declarations include copies in both English and Spanish.  The Court's citations refer to the English copies.

is so numerous that joinder of all members is impracticable"; (2) "there are questions of law and fact common to the class"; (3) "the claims or defenses of the representative parties are typical" of those of the class; and (4) "the representative parties will fairly and adequately protect the interests of the class." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(a)).   In addition to those provisions, the Second Circuit also recognizes an "implied requirement of ascertainability." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

Plaintiff seeks certification under Rule 23(b)(3), which is appropriate for class actions that seek individualized money damages.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("[I]ndividualized monetary claims belong in Rule 23(b)(3).").  Rule 23(b)(3) allows for class certification "if both (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Roach*, 778 F.3d at 405 (quoting Fed. R. Civ. P. 23(b)(3)).

Before certifying a class, a court must engage in a "rigorous analysis" to determine whether the Rule 23(a) prerequisites have been satisfied, which "will frequently entail overlap with the merits of the plaintiff's underlying claim" because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 569 U.S. at 33–34 (internal quotation marks omitted).  That said, Rule 23 does not grant courts "license to engage in free-ranging merits inquiries at the certification stage" and such inquiries may be considered "only to the extent . . . they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The "same analytical principles" that govern Rule 23(a)

also govern Rule 23(b), and "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34.

A court must "make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, must resolve material factual disputes relevant to each Rule 23 requirement, and must find that each requirement is established by at least a preponderance of the evidence." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (internal quotation marks and ellipsis omitted). However, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 254 (E.D.N.Y. 2019) (quoting *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011)); *accord Merryman v. Citigroup, Inc.*, No. 15-CV-9185 (CM), 2018 WL 1621495, at *13 (S.D.N.Y. Mar. 22, 2018). "Accordingly, 'if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 593 (S.D.N.Y. 2021) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968)); *accord In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 340 (S.D.N.Y. 2015).

## DISCUSSION

Plaintiff seeks to certify a class defined as "all current and former non-exempt employees (including maintenance workers, cleaners, washers, pressers, loaders, and counterpersons), employed by Defendants any time during the six (6) year period prior to the filing of the Complaint." (Memorandum of Law in Support of Plaintiff's Motion to Certify Class and Approve Class Counsel ("Pl. Mem."), Dkt. 56, at 11.) The Court finds three sources of ambiguity in that definition. First, the record contains differing titles for the various categories of Green & White

employees, and thus the Court finds the parenthetical list of categories of employees to be unhelpful and a potential source of confusion.  Second, it is not clear if the proposed definition includes non-exempt Green & White employees hired after the filing of this lawsuit, while the record reveals no principled reason to exclude those workers.  Third, the Court finds that counting backward from the filing of the Complaint, rather than stating a date certain, to be less precise, for purposes of defining the class to be certified.[7]

For the sake of clarity, the Court thus modifies the definition of the relevant class (the "Class") to be "all current and former non-exempt employees of Green & White who have been employed by Defendants since March 22, 2013."  *See Morris v. Alle Processing Corp.*, No. 08-CV-4874 (JMA), 2013 WL 12363063, at *1 n.1 (E.D.N.Y. Oct. 22, 2013) ("[C]ourts have an 'inherent power and discretion' to redefine a class."  (quoting *In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*, 241 F.R.D. 435, 438 (S.D.N.Y. 2007) (collecting cases))).  All individuals who fall within that definition are thus "Class Members."  For the reasons explained below, the Court finds that this Class satisfies all of the provisions of Rule 23(a), as well as Rule 23(b)(3), and is thus certified.

---

[7] Defendant Yun asserts that he started operating Green & White in February 2018.  (Yun Dep., Dkt. 56-7, at 8:2, 17:15–18:5.)  Accordingly, Defendants may not have employed anyone before then.  However, the Court sees no reason not to expand the start date to the full reach of the NYLL statute of limitations.  NYLL § 663(3).  There is no issue in this case with both conditionally certifying a FLSA collective action that goes back three years (the full FLSA statute of limitations) and certifying an NYLL class that goes back six years (the full NYLL statute of limitations).  *See, e.g.*, *Espinoza*, 280 F.R.D. at 118 & n.12.  Furthermore, if Defendant Yun's testimony is correct, there will not be any members of the NYLL class who are not also potential members of the FLSA collective.

## I.      Rule 23(a)

### A.      Numerosity

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticable' does not mean 'impossible,' and a precise enumeration or identification of class members is not required." *In re Kind LLC*, 337 F.R.D. at 594 (brackets omitted) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Courts in the Second Circuit presume numerosity "at a level of 40 members." *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 344 (E.D.N.Y. 2016) (quoting *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *accord In re Kind LLC*, 337 F.R.D. at 594.

As discussed earlier, the question of whether the Class in this case satisfies the numerosity requirement turns on whether the Class can properly be defined to include all non-exempt employees of Green & White or only the dry clean pressers. Based on a review of the entire record of this case, it is clear that a class of dry clean pressers alone would not satisfy the numerosity requirement, because such a class would total roughly 10–20 members, at most.

Though, as noted, Magistrate Judge Tiscione and this Court previously found, on the motion for conditional FLSA certification, that Plaintiff had not demonstrated that the class should include any employees besides the dry clean pressers, at the time, Plaintiff had submitted only two pages of Defendant Yun's roughly 80-page deposition. (*See* Dkt. 32-3.) Now that Defendant Yun's full deposition has been submitted to the Court, it is abundantly clear that Defendants apply all of the policies that allegedly violate the NYLL (and FLSA) to *all* of their non-exempt employees.[8] (*See* Yun Dep., Dkt. 56-7, at 53:3–54:8 (automatically deducting time clocked-in

---

[8] In addition to all of the non-exempt categories of employees discussed in this decision, Defendants employ managers, who are presumably exempt from the NYLL and FLSA. (*See* Yun Dep., Dkt. 56-7, at 26:15–17.)

before 7:30 a.m.), 55:14–58:20 (automatically deducting 30 minutes for lunch breaks), 58:21–59:3

(rounding down), 29:25–30:5 (applying spread of hours policy to all employees), 27:5–15, 49:21–

50:12 (providing all employees with the same wage and hour notices and wage statements).)

Since the record before the Court now establishes that all of Green & White's non-exempt

employees were subject to the same allegedly unlawful practices, they may all be considered part

of the Class for purposes of this litigation.  *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 271

(E.D.N.Y. 2016) (finding commonality satisfied where "the class members' claims all derive from

the same compensation policies" (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d

234, 252 (2d Cir. 2011))).  That is true even though the different categories of employees may

have had different job titled, duties, or hours.  *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275

F.R.D. 193, 199 (S.D.N.Y. 2011) (certifying class including employees with different job duties

who worked different hours)); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 395

(N.D.N.Y. 2011) ("[T]hat the proposed class includes a variety of job titles is irrelevant in terms

of typicality and commonality."); *Hamelin*, 274 F.R.D. at 395 (certifying class encompassing "364

different job titles, covering 195 different departments, and multiple facilities" including subclass

"where all hourly employees [we]re subject to [an] automatic meal break deduction").[9]

---

[9] The case the R&R relied on to limit the FLSA class in this case is not inapposite.  (*See* R&R, Dkt. 38, at 9–10 ("[T]his Court is charged with looking at whether the plaintiff and the proposed putative plaintiffs 'have similar positions, job requirements, pay provisions, and the like.'" (brackets omitted) (quoting *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014)).)  For starters, *Juarez* pertained to conditional certification under 29 U.S.C. § 216(b), not class certification under Rule 23.  *Juarez*, 29 F. Supp. 3d at 368.  Second, even in that context, the decision made it clear that the quoted language was only one means of demonstrating the ultimate question, which is whether all of the class members "together were victims of a common policy or plan that violated the law."  *Juarez*, 29 F. Supp. 3d at 369 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).  And third, now that Defendant Yun's full deposition has been submitted, Plaintiff *has* demonstrated that all of the class members "ha[d] similar . . . pay provisions."  *Id.*

Furthermore, since the conditional FLSA certification, Plaintiff has submitted a declaration credibly explaining that the different categories of Green & White employees frequently cover each other's job functions as needed. (Francisco Decl., Dkt. 56-5, ¶ 3.) Defendant Yun contests that fact (Yun Aff. II, Dkt. 59, ¶ 14), but based on both parties' descriptions of Green & White's operation as a whole, the Court finds Plaintiff's account more plausible, and thus finds that she has established the fact that workers in different departments sometimes cover each other's duties by "at least a preponderance of the evidence," *U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 117.

Considering all of Green & White's employees as part of the Class, the Court finds that the Class satisfies the numerosity requirement. Plaintiff's declaration states that approximately 50 people work at Green & White at any given time, with 20% turnover per year. (Francisco Decl. II, Dkt. 56-5, ¶ 7.) At the time of his deposition, in September 2019, Defendant estimated that he employed roughly 28 people, and had employed approximately eight others between his September 2019 deposition and February 2018, when Green & White commenced operations. (Yun Dep., Dkt. 56-7, at 10:20–11:16, 69:11–21.) With a turnover of eight people every 20 months, Defendants would have employed at least another nine people by now. Thus, even by Defendants' calculations, the relevant class would include 45 people. In addition, the Court notes that, when Defendant Yun calculated the number of people he employed during his deposition, he listed the number of people working in each non-exempt category of employment, but based on his own affidavits, Yun omitted an entire category of employees—drivers. (*Compare id.* at 11:6–16 (accounting for spotters, cleaning pressers, laundry pressers, taggers, baggers, and cleaning persons), *with* Yun Aff. II, Dkt. 59, ¶ 11 (including drivers in list of categories of employees).[10])

---

[10] While Plaintiff states that she does not have personal knowledge of whether drivers use the same punch-card system as the other employees (Francisco Decl. II, Dkt. 56-5, ¶ 6), it is clear from the record as a whole—particularly Defendant Yun's own deposition testimony and

Based on the record as a whole, the Court finds by "at least a preponderance of the evidence," *U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 117, that over 40 non-exempt Green & White employees have been subjected to the allegedly unlawful employment practices, *Consolidated Rail Corp.*, 47 F.3d at 483 (numerosity is presumed "at a level of 40 members"), that joinder would be "impracticable," Fed. R. Civ. P. 23(a)(1), and thus that the numerosity requirement is satisfied.[11]

### B.       Commonality

Rule 23(a)(2) requires a finding that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single common question" will suffice. *Wal-Mart*, 564 U.S. at 359 (alteration and brackets omitted). This requirement is satisfied if the question of law or fact is "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson*, 780 F.3d at 137 (quoting *Wal-Mart*, 564 U.S. at 350). Thus, "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation" is key to this analysis. *Wal-Mart*, 564 U.S. at 350. Commonality does not "mean merely that [plaintiffs] have all suffered a violation of the same provision of law," but rather requires plaintiffs "to demonstrate that the class members have suffered the same injury." *Id.* (internal quotation marks omitted).

---

affidavits—that all of the same timekeeping practices are used by all of his employees, including drivers.

[11] While more definitive evidence than the testimony of the parties likely exists on the issue of how many people Green & White has employed, neither party has submitted such evidence. Defendants would have been in a better position to produce that evidence, but did not. And Plaintiff should not be faulted for not being able to obtain discovery on the total number of all non-exempt Green & White employees, since this Court's ruling on the conditional FLSA certification presumably limited discovery to Green & White pressers.

The commonality requirement is easily satisfied here.  Plaintiff alleges that Defendants applied several unlawful policies to the class as a whole, specifically:

(1)    Failing to pay the Class Members for work performed before 7:30 a.m.;

(2)    Failing to pay the Class Members for all hours worked by automatically deducting 30 minutes for lunch;[12]

(3)    Failing to pay the Class Members for hours worked by rounding down the amount of time worked per day;

(4)    Failing to pay overtime as a result of Defendants other time-shaving practices;

(5)    Failing to pay time-and-a-half when Class Member worked more than 10 hours in a single day (violating the NYLL's spread-of-hours provision);

(6)    Providing improper wage and hour notice; and

(7)    Providing improper wage statements.

(Pl. Mem, Dkt. 56, at 15–17, 20.)  The Court finds that the sixth and seventh allegedly unlawful policies would be insufficient to maintain a class action because, even if the unlawful policies were applied to all of the Class Members, Plaintiff could not demonstrate that "the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 350 (internal quotation marks omitted).  That is because, based on the record before the Court, it is not clear that those policies led to an "injury" that can be recognized by a federal court.  Plaintiff alleges that none of the Class Members received

---

[12] Defendants note that the Complaint did not allege that Plaintiff was not paid for work performed before 7:30 a.m. or that Defendants automatically deducted time for meal breaks, and complains that Plaintiff's theories of liability have shifted throughout this litigation. (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Certify Class and Approve Class Counsel, Dkt. 58, at 7–9.)  The Complaint in this case alleged unlawful time-shaving. (Compl., Dkt. 1, ¶ 27.)  Based on the transcript of Defendant Yun's deposition, it is clear that Plaintiff's counsel, upon reviewing Plaintiff's time sheets, was able to calculate that Plaintiff was paid for less time than she was clocked in for, but did not know the exact practices Defendants were using to reduce Plaintiff's clocked-in hours.  It was Defendant Yun's own testimony that revealed his policies of denying workers pay for time clocked-in before 7:30 a.m. and automatically deducting time for meal breaks.  The Court thus finds no issue with the fact that Plaintiff's understanding of the exact policies used to shave time from the Class Members clocked-in hours has evolved throughout the course of this litigation.

wage and hour notices when they were hired or received raises, and that their wage statements "did not include Defendants' phone number, deductions, or gross wages," in violation of the NYLL. (Pl. Mem., Dkt. 56, at 7–8.)  While those may be technical violations of the NYLL, neither Plaintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action, and the Supreme Court has made clear that a statutory violation alone, without a tangible injury or close parallel to a traditional cause of action, does not constitute an injury that can be recognized by the federal courts.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021); *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 62–63 (2d Cir. 2021).[13]  Accordingly, Plaintiff does not have standing to bring those claims, and thus cannot certify a class based on them.  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("It is well established that 'a plaintiff must demonstrate standing for each claim she seeks to press.'" (brackets omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006))).

The first five allegedly unlawful policies, however, clearly satisfy the commonality requirement.  They are all "violation[s] of the same provision[s] of law" that caused the class members to "suffer[] the same injury"—namely, to have their wages reduced.  *See Wal-Mart*, 564 U.S. at 350.  Whether the policies violated the NYLL, and whether Defendants engaged in those policies, "are questions of law [and] fact common to the class," Fed. R. Civ. P. 23(a)(2), which are "capable of classwide resolution," and the answers to those questions "will resolve an issue that is central to the validity of each one of the claims" and be "apt to drive the resolution of the

---

[13] This conclusion also obviates the need to resolve a factual dispute in the record—namely that some Class Members did, in fact, receive proper wage notices, while others did not.  (*See* Reply Memorandum of Law in Support of Plaintiff's Motion to Certify Class and Approve Class Counsel, Dkt. 61, at 9 n.1.)

litigation," *Wal-Mart*, 564 U.S. at 350.  *See, e.g.*, *Shahriar*, 659 F.3d at 252 (finding that commonality was satisfied where policy allegedly violating the NYLL's spread-of-hours provision applied to all class members); *Rivera*, 312 F.R.D. at 271 ("[B]ecause the class members' claims all derive from the same compensation policies, the Court finds that commonality has been satisfied."); *Hamelin*, 274 F.R.D. at 395 (finding commonality satisfied where defendants automatically deducted meal breaks from worked hours, allegedly in violation of the NYLL). Accordingly, the commonality requirement is satisfied.

### C.    Typicality

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality "ensure[s] that class representatives have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Hasemann*, 331 F.R.D. at 268 (quoting *Floyd v. City of New York*, 283 F.R.D. 153, 175 (S.D.N.Y. 2012)).  Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Price v. L'Oreal USA, Inc.*, No. 17-CV-614 (LGS), 2018 WL 3869896, at *3 (S.D.N.Y. Aug. 15, 2018) (quoting *In re Flag Telecom Holdings, Ltd. Secs. Litig. ("Flag Telecom")*, 574 F.3d 29, 35 (2d Cir. 2009)).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* (quoting *Robidoux*, 987 F.2d at 936).  "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *In re Kind LLC*, 337 F.R.D. at 595 (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002)); *accord Hughes*, 317 F.R.D. at 346.

15

Typicality is satisfied here.  The record plainly establishes by at least a preponderance of the evidence that Plaintiff was subjected to all of the allegedly unlawful policies to which all of the Class Members were subjected.  Defendants do not contest that point.  Defendants' only arguments against typicality are (1) that Plaintiff has no personal knowledge of the pay practices of employees in other departments—an argument negated by Defendant Yun's own testimony—and (2) that Plaintiff "is motivated by a pressing need to get revenge for her termination from employment by Defendants" (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Certify Class and Approve Class Counsel ("Def. Mem."), Dkt. 58, at 11), which is more appropriately considered an argument against adequacy, and is thus discussed below.

It is uncontested and established by persuasive evidence that "the same unlawful conduct was directed at . . . both the named plaintiff and the class sought to be represented," *Robidoux*, 987 F.2d at 936–37, that "each class member's claim arises from the same course of events[,] and [that] each class member [will] make[] similar legal arguments to prove the defendant's liability," *Flag Telecom*, 574 F.3d at 35.  Accordingly, the typicality requirement is satisfied.

## D.    Adequacy

Rule 23(a)(4) requires finding that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This provision requires assessing the adequacy of both (1) the named plaintiff; and (2) plaintiff's counsel.  *See Flag Telecom*, 574 F.3d at 35.  A Court must determine (1) whether "plaintiff's interests are antagonistic to the interest of other members of the class" and (2) whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Id.* (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  The inquiry is focused on uncovering "conflicts of interest between named parties and the class they seek to represent," but certification will not be defeated unless a conflict is "fundamental."  *Id.*

16

After challenging numerosity based on the conditional FLSA certification, Defendants secondary—and only other substantive—challenge to class certification is an attack on Plaintiff's ability to represent the Class.  (Def. Mem., Dkt. 58, at 3.)  Defendants argue that Plaintiff will not adequately represent the Class because, "[b]esides her wage claims, Plaintiff claims she was unjustly terminated in violation of the Family and Medical Leave Act.  However, in her affidavit in support of the instant motion, Plaintiff states, 'I believe I was retaliated against because I had complained about my compensation.  They used my sick day as an excuse to fire me.'"  (Def. Mem., Dkt. 58, at 12 (record citations omitted).)  Defendants characterize that as "shifting and contradictory contentions" as to "the reason [Plaintiff] was terminated," point again to the fact that Plaintiff's theory about how Defendants engaged in time-shaving has changed during the course of this litigation, and argue that these facts demonstrate that "Plaintiff is clearly a disgruntled employee" and "belie her asserted motive that she wants to act in the best interests of the other members of the proposed class."  (*Id.* at 12–13.)

Defendants are wrong on all counts.  The Court sees nothing "shifting [or] contradictory" about alleging that Defendants retaliated against Plaintiff for taking a sick day, in violation of the FMLA, and also believing that Defendants used the fact that Plaintiff took a sick day as an excuse to terminate her in retaliation for her raising concerns about Defendants' compensation policies.[14] As discussed above, the Court also does not find anything problematic about the fact that Plaintiff's theory of how Defendants shaved the class members' hours has evolved during the course of this litigation.  (*See supra* note 12.)  That is entirely consistent with the discovery process in civil litigation.

---

[14] In his deposition, Defendant Yun testified that he fired Plaintiff for taking sick days. (Yun Dep., Dkt. 56-7, at 41:3–21, 70:16–19.)

All Defendants are left with, then, is the fact that, in addition to asserting the claims common to all Class Members, Plaintiff asserts an additional claim for violation of the FMLA as to her alone.  That does not defeat adequacy.  *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323 (ALC) (AJP), 2013 WL 1040052, at *19 (S.D.N.Y. Mar. 15, 2013) ("[T]here is no merit to [defendant's] argument that [plaintiff's] individual retaliation claim defeats class certification."), *report and recommendation adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013); *Toure v. Cent. Parking Sys. of N.Y.*, 05-CV-5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) ("Defendants argue that certain Plaintiffs assert racial discrimination as a reason that they were not given forty hours of work per week, and that this defeats typicality.  This argument is without merit, because it rests on a conflation of Plaintiffs' racial discrimination claims (which are not brought in a representative capacity) with their unpaid overtime claims (which are).  Plaintiffs' NYLL claims are the same as those of the putative class members . . . .").[15]

The Court finds that the evidence as a whole clearly demonstrates that Plaintiff "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Plaintiff's declarations demonstrate that she understands the claims in this case.  And both Plaintiff's declarations and Defendant Yun's deposition—in which he noted that Plaintiff had previously brought other employees' concerns about compensation practices to his attention—demonstrate that she will zealously represent the interests of all Class Members.  (*See* Yun Dep., Dkt. 56-7, at 25:17–19.) Nothing in the record suggests that Plaintiff has any "conflict[] of interest [with] the class [she]

---

[15] While these cases discuss separate claims in the context of typicality, the typicality and adequacy inquiries "tend to merge," *Wal-Mart*, 564 U.S. at 350 n.5, and, as noted, Defendants tried to raise the issue of Plaintiff's individual grievances with Defendants with respect to both provisions.

seek[s] to represent," let alone one that is "fundamental." *Flag Telecom*, 574 F.3d at 35. Accordingly, the adequacy requirement is satisfied with respect to Plaintiff.

With respect to Plaintiff's counsel, C.K. Lee and the Lee Litigation Group, Defendants do not question their adequacy. Plaintiff's counsel has also submitted a declaration stating that they have "served as lead counsel in numerous wage and hour class and collective actions," have "recovered significant sums of money for a number of New York City employees," and are "willing and able to commit the necessary resources to represent the class." (Declaration of C.K. Lee, Esq. ("Lee Decl."), Dkt. 57, ¶¶ 7–9.) Other courts have found Mr. Lee to be adequate class counsel in NYLL class actions. *See, e.g.*, *Orellana v. One If By Land Rest. LLC*, No. 18-CV-7865 (VSB), 2020 WL 5768433, at *7 (S.D.N.Y. Sept. 27, 2020); *Flores v. Anjost Corp.*, 284 F.R.D. 112, 129 (S.D.N.Y. 2012). Furthermore, as discussed in greater detail below when analyzing Plaintiff's counsel under Rule 23(g), this Court finds that counsel's representation has been adequate in the present litigation. Accordingly, the adequacy requirement is satisfied.

### E. Ascertainability

"[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher*, 806 F.3d at 24 (internal quotation marks omitted). This is not a "freestanding administrative feasibility requirement." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). Rather, "a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *Id.* at 257.

This "threshold requirement," *id.*, is easily satisfied here. The Class is defined using "objective criteria": individuals employed by Green & White since a date certain. *See id.* at 264–66. There are "definite boundaries" to that definition. *Id.* Furthermore, Defendant Yun's deposition reveals that he has kept track of whom Green & White has employed since it started

operating.  It will thus be "administratively feasible" to identify "whether a particular individual"

is a Class Member.  *Brecher*, 806 F.3d at 24.   Accordingly, the implied requirement of

ascertainability—and every requirement of Rule 23(a)—is satisfied.

## II.     Rule 23(b)(3)

Rule 23(b)(3) has two requirements: predominance and superiority.  *Wal-Mart*, 564 U.S.

at 362–63.   Predominance requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members," and superiority requires "that

a class action is superior to other available methods" of adjudication.  Fed. R. Civ. P. 23(b)(3).

### A.     Predominance

"Predominance is satisfied if resolution of some of the legal or factual questions that

qualify each class member's case as a genuine controversy can be achieved through generalized

proof, and if these particular issues are more substantial than the issues subject only to

individualized proof."  *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (quoting *Roach*,

778 F.3d at 405).   It requires "that *questions* common to the class predominate, not that those

questions will be answered, on the merits, in favor of the class."  *Amgen*, 568 U.S. at 459; *accord*

*Johnson*, 780 F.3d 138.   "When one or more of the central issues in the action are common to

the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)

even though other important matters will have to be tried separately, such as damages or some

affirmative defenses peculiar to some individual class members."  *Tyson Foods*, 577 U.S. 442, 453

(2016) (internal quotation marks omitted).

Predominance is satisfied here.  Plaintiff correctly notes that "[c]ourts routinely find that

common questions predominate in wage and hour actions brought on behalf of a class of

employees of the same employer, alleging unlawful policies and practices."  (Pl. Mem., Dkt. 56,

at 19); *see, e.g.*, *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 108 (E.D.N.Y.

2011) ("[P]redominance is satisfied where, as here 'the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees.'" (quoting *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008)); *see also Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (common questions about whether defendants' policies violated labor laws predominated); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 184 (S.D.N.Y. 2007) (same); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (same); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004) (same).  In fact, "numerous courts have found that wage claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765 (JBW), 2012 WL 1107711, at *10 (E.D.N.Y. Apr. 2, 2012) (alteration omitted).

The Court has reviewed the record in its entirety and sees no material issue that distinguishes this case from those cited above, such that common issues would not predominate here.  The only issue raised by Defendant is that fact that Plaintiff's theory about how, exactly, Defendants engaged in time-shaving has evolved over the course of this litigation.  As discussed, the Court finds that argument unpersuasive.  (*See supra* note 12.)  The Court notes that while the Class Members may have worked different hours and be entitled to different amounts of damages, that does not defeat predominance.  *See, e.g.*, *Tyson Foods*, 577 U.S. at 453; *Noble*, 224 F.R.D. at 345 ("[I]ndividualized damages inquires do not bar certification."); *Garcia*, 281 F.R.D. at 108 (collecting cases); *Iglesias-Mendoza*, 239 F.R.D. at 373 ("Should plaintiffs prevail, things like any variations in schedule and type of work performed will determine the measure of damages."); *Poplawski*, 2012 WL 1107711, at *11 ("There are a number of management tools available to a

21

district court to address any individualized damages issues that might arise in a class action . . . .").

Accordingly, predominance is satisfied.

### B.    Superiority

Courts are to consider the following factors in determining the superiority of the class

mechanism:

> [(1)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(2)] the extent and nature of any litigation concerning the controversy already begun by or against class members; [(3)] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, all four factors weigh decidedly in favor of class certification.  The Court has no

reason to believe that any individual Class Member has an interest in controlling the prosecution

or that there are other cases involving the same subject matter.  The Court finds a class action

particularly desirable in this case, where "it is likely the *only* device by which many of the proposed

class members would obtain relief."  *Morris*, 2013 WL 1880919, at *14 (emphasis added); *see*

*also Iglesias-Mendoza*, 239 F.R.D. at 373 (finding it "extremely unlikely" that proposed class

members would pursue separate actions where they were "almost exclusively low-wage workers

with limited resources and virtually no . . . familiarity with the legal system"); *Perez v. Allstate*

*Ins. Co.*, No. 11-CV-1812 (JFB) (AKT), 2014 WL 4635745, at *24 (E.D.N.Y. Sept. 16, 2014)

(finding that few members of NYLL class "could even contemplate proceeding with this litigation

in any context other than through their participation in a class action, given the expense and burden

that such litigation would entail").  And finally, the Court does not foresee any difficulties in

managing this class action beyond those involved in any other NYLL case, where courts routinely

find class actions to satisfy the superiority requirement.  *See Whitehorn*, 275 F.R.D. at 200

(S.D.N.Y. 2011) (collecting cases); *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-CV-4116

(RWS), 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (collecting cases).  Accordingly, the superiority requirement, and thus both requirements of Rule 23(b)(3), are satisfied.

## III.     Rule 23(g)

As noted, Defendants do not challenge the adequacy of Plaintiff's counsel.  Nevertheless, before certifying Plaintiff's counsel for the class ("Class Counsel"), the Court "must consider"

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 255 (2d Cir. 2021).

Plaintiff's counsel has done an adequate job identifying and investigating the potential claims in this action.  The Court questions counsel's decision not to provide the entire transcript of Defendant Yun's deposition when attempting to conditionally certify the FLSA class, and the fact that counsel did not seem to appreciate the significant consequences of this Court's conditional FLSA certification in the present briefing.  Nevertheless, counsel's deposition of Defendant Yun demonstrated adept use of the available evidence and strategic questioning of Defendant Yun to identify all of the ways Defendants allegedly are shaving their employees' clocked-in hours.  In addition, Plaintiff's counsel's briefing of the present motion culled the relevant facts, presented many helpful cases, and developed strong legal theories.

The other factors all weigh in favor of certifying Plaintiff's counsel.  Counsel has extensive experience handling NYLL class actions, as well as extensive knowledge of the NYLL and other areas of law related to this case.  Finally, they have committed to expend the resources necessary to litigate this action, and this Court has no reason to believe that they do not have those resources.  Accordingly, Plaintiff's counsel, C.K. Lee and the Lee Litigation Group, are appointed as Class Counsel.

## IV.     Reconsideration of Conditional FLSA Certification

One issue remains in this case: What to do about the tension between this Court's ruling on the conditional FLSA certification of a class of only dry clean pressers, and this Rule 23 certification of an NYLL class of all non-exempt Green & White employees?  The Court takes this opportunity to *sua sponte* reconsider its ruling on the conditional FLSA certification.

"A district court . . . possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final."  *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, 2015 WL 545565, at *2, (S.D.N.Y. Feb. 9, 2015).  "*Sua sponte* reconsideration is appropriate where there is a need to correct a clear error or prevent manifest injustice, there is an intervening change in the applicable law, or new evidence is available."  *Id.* (citing *Benavidez v. Piramides Mayas Inc.*, 2013 WL 2357527, at *3 (S.D.N.Y. May 24, 2013)).  "Whether such revision is appropriate in any given case is within the sound discretion of the trial judge."  *Acha v. Beame*, 570 F.2d 57, 63 (2d Cir. 1978); *accord Esposito v. Suffolk Cty. Cmty. Coll.*, 517 F. Supp. 3d 126, 134 (E.D.N.Y. 2021).

For the reasons discussed above, in light of the additional evidence brought before the Court since the conditional FLSA certification, the Court finds that the conditional FLSA collective should be amended to include "all current and former non-exempt employees of Green & White who have been employed by Defendants since March 22, 2013."[16]  Aside from that expansion, Judge Tiscione's April 20, 2020 Report and Recommendation (R&R, Dkt. 38), as modified and adopted in this Court's June 12, 2020 Memorandum & Order (Dkt. 44), remains the law of this case, and its factual and legal findings remain intact.

---

[16] With certification of the larger class appropriate under Rule 23, it is clearly appropriate under the "less demanding" standard of 29 U.S.C. §§ 201 *et seq.*

The Court is aware that this modification may require reopening discovery—*e.g.*, to provide notice to Green & White employees who were not dry clean pressers during the class period, as well as to exchange discovery and perhaps take depositions with respect to those employees.  In the interests of justice, the Court finds that reopening discovery for those limited purposes is warranted here.  Accordingly, the Court instructs the parties to return to Judge Tiscione to re-craft the notice to the FLSA class members, establish deadlines and the scope of additional discovery, and draft a notice for the Rule 23 NYLL class.

## CONCLUSION

For the reasons explained above, the Court issues the following rulings.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certifies a Class of "all current and former non-exempt employees of Green & White who have been employed by Defendants since March 22, 2013," and appoints C.K. Lee and the Lee Litigation Group as Class Counsel.  The Court *sua sponte* expands the conditional FLSA class to include the same Class Members as the Rule 23 NYLL Class.  And the Court directs the parties to Magistrate Judge Tiscione to draft and issue a notice to the Rule 23 NYLL class, to revise and re-issue a notice to the conditional FLSA class, and to reopen discovery for the limited purposes outlined above.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  March 28, 2022
        Brooklyn, New York

25